In re Benie **PURSLEY**, Sr. and Bonnie Pursley, Debtors.

**FIRST DEPOSIT NATIONAL BANK, Plaintiff,**

v.

Benie **PURSLEY**, Sr., et al., Defendants.

Bankruptcy No. 92–3508.
Related Case: 92–32429.

United States Bankruptcy Court, N.D. Ohio, W.D.

July 22, 1993.

Lee R. Kravitz, Cleveland, OH, for plaintiff.

Colleen M. O'Connell, Bolotin Law Offices, Toledo, OH, for defendants.

### MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon Plaintiff's Complaint to Determine Dischargeability of Debt and Motion for Summary Judgment. Both parties had the opportunity to conduct discovery and have submitted briefs arguing their position on the instant issue. The Court has reviewed the entire record in this case. Based upon that review, and for the following reasons, this Court finds that the debt owed to Plaintiff in the amount of Five Thousand Two Hundred Forty-five and 67/100 Dollars ($5,245.67) plus interest is Nondischargeable.

### FACTS

In October of 1988, the Defendants, Benie and Bonnie Pursley, signed a membership request certificate for a Visa Gold Card and returned the signed certificate to the Plaintiff, First Deposit National Bank (hereafter "First Deposit"). Shortly after opening a joint charge account, Defendant, Bonnie Pursley, obtained a cash advance for Three Thousand Dollars ($3,000.00). This borrowed sum was later repaid in full.

Later, in March of 1992, Defendant, Bonnie Pursley, took another cash advance in the sum of Five Thousand Dollars ($5,000.00). She made only one payment of One Hundred One Dollars ($101.00) on the second cash advance. This payment was received by First Deposit on April 13, 1992.

Through deposition, the Defendant, Bonnie Pursley, revealed that she had not made any payments on the Five Thousand Dollar ($5,000.00) cash advance after April of 1992 due to lack of funds. She testified that she and her husband began to fall behind on payments on their debts beginning in 1991. In an attempt to stay afloat, Bonnie Pursley took cash advances from the different credit cards such as Discover, Visa and Mastercard that the Defendants possessed to try to catch up on payments (Depo. Transcript pg. 16, lines 1–14). She admitted that she was "robbing Peter to pay Paul." Furthermore, Defendant, Bonnie Pursley, acknowledged at the deposition that she took such cash advances knowing that they did not possess the funds to pay back these creditors (Depo. Transcript pg. 19, lines 1–10). According to her testimony provided at the deposition, around April or May of 1992, Bonnie Pursley reached a point where she could no longer borrow any more money from her credit cards because her credit cards were "maxed out". There were no more funds available on her credit cards from which cash advances could be taken. As she had no money available to keep the payments up to date, she became delinquent on pay-

ments on the various credit cards that the Defendants had in their name.

Records which were provided during their declaration of insolvency reveal that the Defendant's total monthly income was One Thousand Eight Hundred Seventy-four and 87/100 Dollars ($1,874.87). A little more than One Thousand One Hundred Dollars ($1,100.00) came from Bonnie Pursley's monthly wages earned at her place of employment and Seven Hundred Seventy-two and 87/100 Dollars ($772.87) was derived from disability checks received by Benie Pursley, Sr. according to figures listed in Schedule I. At the deposition, Bonnie Pursley testified that the figures put forth in Schedule J involving the current monthly expenditures were accurate to the best of her knowledge and did not include any credit card payments (Depo. Transcript pg. 38, lines 18–24). The total monthly expenses were listed as One Thousand Eight Hundred Sixty and 71/100 Dollars ($1,860.71), leaving less than Fifteen Dollars ($15.00) available for credit card payments. As such, it is clear that their expenses, including their monthly required credit card payments, were significantly larger than their monthly income. The only Creditor scheduled on that list to receive installment payments was one for a car. With less than Fifteen Dollars ($15.00) disposable income provided in Schedule J, the Defendants were unable to remain current on their credit card payments.

The Defendants ultimately found themselves insolvent and filed a Petition for Relief under Chapter 7 of the United States Bankruptcy Code on June 29, 1992. The debt owed to First Deposit was included in Pursley's Schedule of Creditors Holding Unsecured Nonpriority Claims. The First Meeting of the Creditors was held on August 24, 1992. The Plaintiff in this case timely filed a Complaint to Determine Dischargeability of Defendant's Debt to First Deposit pursuant to 11 U.S.C. § 523(a)(2)(A). During discovery, the Plaintiff took the Defendants' Depositions. In regard to Discharge of the Debtors from their debts to all Creditors, the Court re-

leased the Debtor from all dischargeable debts on November 16, 1992. However, this suit continued as the debt in this case is alleged to be excepted from discharge under clause (2) of 11 U.S.C. Section 523. The Plaintiff filed a Motion for Summary Judgment on the instant issue. The Defendants filed a Motion in Opposition to Plaintiff's Motion for Summary Judgment.

## *LAW*

The relevant section of 11 U.S.C. Section 523 reads as follows:

Section 523. Exceptions to Discharge.

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement reflecting the debtor's or an insider's financial condition;

## *DISCUSSION*

The Plaintiff seeks a determination that Defendants' indebtedness of Five Thousand Two Hundred Forty-five and 67/100 Dollars ($5,245.67) is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). The determination of dischargeability of a particular debt is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

The standard of proof in determining dischargeability of debts obtained by false pretenses or a false representation under 11 U.S.C. § 523(a) is preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In order to prove the debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A) the creditor must prove by a preponderance of the evidence that (1) that the debtor made representations; 2) that at the time he knew they were false; 3) that he made them with the intent to deceive the creditor; 4) that the creditor relied on the representations; and 5) that the creditor's loss was proximate result of the misrepre-

sentations having been made. See, *In re Satterfield*, 25 B.R. 554 (Bkrtcy.N.D.Ohio 1982); *In re Tipple*, 80 B.R. 93 (Bkrtcy. N.D.Ohio 1987); and *In re Victorian*, 8 B.R. 196 (Bkrtcy.N.D.Ohio 1981).

■ According to Federal Rule of Civil Procedure 56, Summary Judgment can only be properly granted when the Movant can show that there is no genuine issue of material fact and that the Movant is entitled to judgment as a matter of law. Yet, the Movant must be able to prove all the elements of the cause of action in order to succeed in his case. *In re Tipple*, supra at 95. Furthermore, a Motion for Summary Judgment must be construed in a light most favorable to the opposing party. *In re Chech*, 96 B.R. 781, 783 (Bkrtcy. N.D.Ohio 1988)

■ Before a decision can be made on the Motion for Summary Judgment, the Court must first decide if the Plaintiff is able to meet its burden of proof in determining a debt to be nondischargeable. The first element to be considered is representation. The evidence provided unequivocally shows that the money the Defendants borrowed from the Plaintiff was obtained through false pretenses and a false representation. Generally, it has been recognized that by using a credit card to purchase goods or take cash advances constitutes an implied representation to the merchant and card issuer that the buyer has the financial means and intention to pay for such expenses. *In re Satterfield*, supra at 557. Through use of the Visa Gold Card, the Debtors impliedly represented to First Deposit that they had the financial ability to pay back the Five Thousand Dollar ($5,000.00) cash advance they took in March of 1992. The testimony provided in the deposition and the available records clearly demonstrates the Pursley's inability to pay back this debt as it was incurred. With less than Fifteen Dollars ($15.00) left after monthly expenses, there is no way that the Defendants could have thought that they had the ability to repay First Deposit.

■ In her deposition, Bonnie Pursley admitted to being delinquent with all other creditors. She also testified that all their credit cards were basically "maxed out" when they took the cash advance in March of 1992. She admitted in the deposition that she could not afford to pay her creditors and that she was "robbing Peter to pay Paul" in an attempt to keep payments up to date. This establishes that the Debtor, Bonnie Pursley, knew her representation was false, fulfilling the second requirement for proving a debt to be nondischargeable under 11 U.S.C. § 523(a)(2)(A).

■ In establishing the Debtor's intent to deceive First Deposit, it has been accepted that such an intention can generally be proven only by circumstantial evidence indicating a subjective intent on the part of the Debtor to deceive the merchant or card issuer into believing that the Debtors had the ability to pay them back when this was not the case. *In re Satterfield*, supra. Furthermore, the factors that can be considered in proving a Debtor's actual intent to deceive are as follows: (1) the length of time between the charges made and the filing of bankruptcy; (2) whether or not an attorney has been consulted concerning the filing of bankruptcy before charges are made; (3) the number of charges made; (4) the amount of the charges; (5) the financial condition of the debtor at the time the charges are made; and (6) whether the charges were above the credit limit of the account. See *Satterfield*, 25 B.R. at 557 and *In re Doggett*, 75 B.R. 789, 791 (Bkrtcy.S.D.Ohio 1987). After examining these factors and applying them to this case, the Court is led to the conclusion by a preponderance of the evidence that the representations were made with the intent to deceive the creditor. At the time the Five Thousand Dollar ($5,000.00) cash advance was taken, the Defendants were basically "maxed out" on their credit cards and had become delinquent on payments to other creditors. Upon consideration of the amount of the advance and the financial situation of the Defendants at the time of the cash advance, their intent to deceive is strengthened. By comparing their monthly budget

and monthly income, it is shown that the Defendants had no ability to repay the cash advance. By using the credit card, the Pursleys impliedly represented to First Deposit their ability to pay them back when this was not the case.

The fourth element to be proven is the Creditor's actual and reasonable reliance on the representations of the Debtor.

"Whereas reliance in the normal credit transaction contemplates that the issuer of credit make personal inquiry of the debtor at the time of each credit transaction, credit card cases involve a continuing relationship between debtor and creditor and only infrequent inquiry as to the continuing state of the debtor's financial affairs. As a result, reliance, or lack thereof, cannot be shown as it is in the normal credit transaction by the creditor's conduct in response to the debtor's statement of his affairs in a financial statement. For this reason, actual reliance is evidenced by the fact that the card holder actually purchased the goods on credit." *Satterfield*, 25 B.R. at 560–61. See also, *In re Schnore*, 13 B.R. 249, 257 (Bkrtcy.W.D.Wis.1981).

Upon examining the record and the evidence provided, this Court finds that First Deposit was reasonable in relying on the Defendants' implied representation that they had the ability and the intention to repay the cash advance.

The reasonableness of reliance depends on the past credit record of the Debtor in meeting the obligations incurred by use of a credit card. See *Satterfield,* supra. Prior to the initial Three Thousand Dollar ($3,000.00) cash advance in 1988, a credit check with favorable results was run as evidenced by the Affidavit of Thomas Clancy, the Assistant Vice–President of First Deposit which is marked as Exhibit B. First Deposit used the fact that the initial balance had been paid off and the statements by Bonnie Pursley revealing her continued maintenance of employment as indications of intention and ability to repay the debt upon which the Plaintiff could rely. As such, the Plaintiff in the instant case was reasonable in relying on the credit report, its previous dealings with the Defendants and statements of the Defendant Bonnie Pursley in granting a credit extension.

The final element which must be established is proximate cause. It has been proven that First Deposit's loss is a direct consequence of the Pursley's use of their Visa Gold Card during March of 1992. Therefore, there is no question in the eyes of the Court that the Plaintiff's loss was the proximate result of the false representations made by the Defendants.

In deciding the Summary Judgment issue, it must be decided if there are any genuine issues of material fact. Rule 56 of the Federal Rules of Civil Procedure sets forth that it is the burden of the Movant to establish that no genuine issue of material fact exists. In this particular case, First Deposit has met its burden of proof. It has been clearly demonstrated that the Defendants made a false representation to the Plaintiff when they used the Visa Gold Card; that the Defendants had the intent to deceive the Plaintiff; that the Plaintiff relied on Defendant's representations in granting them a cash advance; and that the Plaintiff's loss was a proximate result of the misrepresentations made by the Defendants. The Pursleys had no ability to repay their debt at the time it was incurred and only made one payment toward the Five Thousand Dollar ($5,000.00) cash advance. The testimony provided by Bonnie Pursley in the deposition, the Affidavit of Thomas Clancy and other submitted documents indicate that all of the five (5) required elements under 11 U.S.C. § 523(a)(2)(A) have been met, and there are no genuine issues as to any material facts. As such, First Deposit is entitled to judgment as a matter of law.

In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically related to in this opinion.

Accordingly, it is

**ORDERED** that Defendant's debt to Plaintiff in the amount of Five Thousand Two Hundred Forty-five and 67/100 Dollars ($5,245.67) plus interest at the rate of 21.9% from March 17, 1992, to the date of filing Bankruptcy, June 29, 1992, be, and is hereby, **NONDISCHARGEABLE.**

It is further **ORDERED** that the Defendants must pay Plaintiff's court costs and reasonable attorney fees. Plaintiffs must submit within Fourteen (14) days documents regarding the attorney costs in maintaining this action in order for the Court to determine the amount which the Defendant must pay.