**NATIONAL BANK OF COMMERCE, Appellant,**

v.

**Marten H. LAZAR, Appellee.**

No. 95–2521–TUV.

Bankruptcy No. 94–26615–DSK.

Adv.Proc. No. 94–1039.

United States District Court, W.D. Tennessee, Western Division.

Dec. 11, 1995.

162

Steven N. Douglass, Memphis, TN.

Norman P. Hagemeyer, Memphis, TN.

## ORDER ON BANKRUPTCY APPEAL

TURNER, District Judge.

Appellant-creditor National Bank of Commerce ("NBC") appeals a ruling of the bankruptcy court which determined that certain debts of appellee-debtor Dr. Marten H. Lazar ("Dr. Lazar") were dischargeable in bankruptcy. For the reasons set forth below, this court affirms.

### I. FACTS

The underlying facts in this case are generally undisputed and can be briefly summarized as follows. In 1977, Dr. Lazar, a podiatrist, applied for and received two Mastercard credit cards from NBC, Account No. 5338–0006–3786–9589 ("Account No. 1") and Account No. 5338–0006–3675–0806 ("Account No. 2"). He also borrowed $50,000 from NBC to help him to set up his private practice, a loan he eventually repaid. In 1981, he applied for and received from NBC a Visa credit card, Account No. 4457000000533299 ("Account No. 3").

Dr. Lazar's income fluctuated from year to year depending upon the success of his practice. In addition, the income of Dr. Lazar's wife, a part-time nurse, also fluctuated depending on how often she was working. Although Dr. Lazar was constantly in debt and at times borrowed the maximum allowed un-

der his credit cards, he testified that he would pay down the credit card balances and he never exceeded his credit limits.

In 1992 and 1993, Dr. Lazar began to experience financial difficulties. His income decreased in those years, and the Internal Revenue Service filed a tax lien against him. Eventually, Dr. Lazar was able to work out an agreement with the IRS to repay the money owed.

In January 1994, Dr. Lazar obtained a $4,000 cash advance on Account No. 2 to pay his daughter's private school tuition, which was past-due. On February 4, 1994, on the advice of his attorney, Dr. Lazar visited Norman Hagemeyer ("Hagemeyer"), a bankruptcy attorney, to discuss his financial troubles. On February 25, 1994, Dr. Lazar obtained a $2,500 cash advance on Account No. 3, which he used for basic living expenses.

On March 25, 1994, Hagemeyer wrote a letter on behalf of Dr. Lazar to MBNA, another credit card company with which he held two accounts. Hagemeyer noted that Dr. Lazar's accounts with MBNA had outstanding balances of $27,000 and $8,000 and stated that Dr. Lazar would declare bankruptcy unless a settlement could be arranged. In that letter, Hagemeyer also stated that "[Dr. Lazar] has come to my office on more than one occasion to discuss the filing of a straight Chapter 7 bankruptcy petition." MBNA responded with a letter offering a workout that Dr. Lazar found unacceptable.

Dr. Lazar testified that after receiving MBNA's response he discontinued his use of the MBNA charge cards. It is unclear whether he stopped using the MBNA credit cards because his charging privileges had been revoked or because he had decided to file for bankruptcy, but Dr. Lazar continued to use all three credit cards at issue here.

1. In his brief, Dr. Lazar frames the question for appeal as follows:
Whether the Bankruptcy Court's finding that the pre-March 25, 1994 charges on debtor's three credit card accounts with National Bank of Commerce were dischargeable and that post-March 25, 1994 charges were [non]dischargeable was clearly erroneous.
Brief of Appellee at 2. However, he did not file a Notice of Cross–Appeal regarding the nondis-

Eventually, Dr. Lazar's obligations became unmanageable. On July 7, 1994, Lazar and his wife filed for bankruptcy under Chapter 7 of the bankruptcy code.

In the bankruptcy court, NBC sought a determination that the charges incurred on the three credit cards during the first half of 1994, which resulted in an alleged increase in the balance on those cards of approximately $7,000, should be excepted from general discharge under 11 U.S.C. § 727(a) by means of 11 U.S.C. § 523(a)(2)(A). The bankruptcy court held a hearing on this issue on April 25, 1995, at which Dr. Lazar testified. On May 2, 1995, the court orally ruled that prior to March 25, 1994, Dr. Lazar did not have the requisite intent to defraud, and thus all debts incurred prior to that date were dischargeable. The court further ruled that on and after March 25, 1994, Dr. Lazar did possess such intent, and therefore all debts incurred on or after that date were nondischargeable. NBC appeals to this court the bankruptcy court's ruling that the pre-March 25, 1994 debts were dischargeable.[1]

## II. *SUBSTANTIVE LAW*

The statute exempting certain debts from general discharge in bankruptcy is found at 11 U.S.C. § 523(a)(2)(A) ("§ 523(a)(2)(A)"), which provides, in relevant part:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or insider's financial condition.

In *In re Phillips*, 804 F.2d 930, 932 (6th Cir.1986), the Sixth Circuit held that:

chargeability of the debts incurred on or after March 25, 1994, and did not address this issue in his brief. In his conclusion, he requests only that this court affirm the bankruptcy court's determination that the pre-March 25, 1994 debts were dischargeable. *Id.* at 10. Thus, any issue relating to the debts occurring on or after March 25, 1994, is not properly before this court.

[I]n order to except a debt from discharge under § 523(a)(2)(A) the creditor must prove that the debtor obtained money through a material misrepresentation that at the time the debtor knew was false or made with gross recklessness as to its truth. The creditor must also prove the debtor's intent to deceive. Moreover, the creditor must prove that it reasonably relied on the false representation and that its reliance was the primary cause of loss.

See also In re McLaren, 990 F.2d 850, 852 (6th Cir.1993); In re Ward, 857 F.2d 1082, 1083 (6th Cir.1988).

■ Exceptions to dischargeability are to be strictly construed against creditors. Gleason v. Thaw, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915); Ward, 857 F.2d at 1083. Thus, the burden is on the creditor to prove non-dischargeability, which it must do by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

After setting out the above law, the bankruptcy court found that NBC had failed to meet its burden of proving intent to defraud on the part of Dr. Lazar for debts incurred on the three accounts prior to March 25, 1994. Accordingly, the court did not address the other elements of § 523(a)(2)(A) in determining that those debts were dischargeable.

■ A district court reviewing a bankruptcy proceeding acts as an appellate court. See In re Caldwell, 851 F.2d 852, 857 (6th Cir.1988). As such, it reviews the bankruptcy court's factual findings to determine whether they are clearly erroneous, Bankruptcy Rule 8013, and reviews its legal conclusions de novo. Caldwell, 851 F.2d at 857.

■ A lower court's finding with respect to intent is a factual determination and therefore may be set aside only if clearly erroneous. See, e.g., West v. Fred Wright Constr. Co., 756 F.2d 31, 34 (6th Cir.1985); In re Rubin, 875 F.2d 755, 758 (9th Cir.1989) (bankruptcy court finding of intent under § 523(a)(2)(A) subject to clearly erroneous standard). This court may not disturb the bankruptcy court's determination unless there is "the most cogent evidence of mistake or miscarriage of justice." In re Johnson

and Assoc., Inc., 845 F.2d 1395, 1400–01 (6th Cir.1988) (citation omitted). Moreover, Bankruptcy Rule 8013 states that "[f]indings of fact, whether based on oral testimony or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses."

■ Turning to the issue here, courts have looked at a number of factors to determine whether a credit card user who later files for bankruptcy had the intent to defraud when making the credit card purchases. These factors generally include:

(1) the length of time between the charges made and the filing of bankruptcy; (2) whether or not an attorney has been consulted concerning the filing of bankruptcy before charges are made; (3) the number of charges made; (4) the amount of the charges; (5) the financial condition of the debtor at the time the charges are made; and (6) whether the charges were above the credit limit of the account.

In re Pursley, 158 B.R. 664, 668 (Bankr. N.D.Ohio 1993); see also In re Doggett, 75 B.R. 789, 791 (Bankr.S.D.Ohio 1987) (enumerating 12 factors). Of course, the intent not to repay the debt must be present at the time of purchase. In re Satterfield, 25 B.R. 554, 560 (Bankr.N.D.Ohio 1982). It is therefore incumbent upon the factfinder to determine when, if ever, the intent not to repay developed, and to separate for purposes of determining dischargeability those purchases made before that date and those made after. See id. The bankruptcy court here determined that Dr. Lazar developed that intent on March 25, 1994, the date of the letter threatening bankruptcy, and this court must examine whether that line of demarcation was appropriate.

■ Applying the above factors and the applicable standard of review, this court finds that the bankruptcy court's determination regarding intent was not clearly erroneous. First, the credit card purchases held dischargeable in the court below were all made more than three months prior to the filing of the bankruptcy petition. The second factor encompasses appellant's strongest argument,

i.e. the charges incurred after Dr. Lazar's initial visit to Hagemeyer on February 4, 1994, were made with the intent not to repay NBC because at that time he was contemplating bankruptcy. Indeed, "[t]here is an inherent contradiction in contemplating bankruptcy, on the one hand, and a representation that one has the ability and intent to pay for the goods purchased on credit, on the other." *Satterfield*, 25 B.R. at 560. However, Dr. Lazar testified that he sought Hagemeyer's advice in the hopes of settling his outstanding debts so that he would not have to file for bankruptcy. The bankruptcy court found this evidence persuasive, stating "I sense that Dr. Lazar was opposed to filing bankruptcy and it was a last resort."

Third, the number of charges made was not excessive. Fourth, although the amount of the charges was not insignificant and included a $4,000 cash advance and a $2,500 cash advance, those advances were not taken primarily to purchase luxury items but rather to pay for his daughter's private school tuition and to meet basic living expenses.

The fifth factor, Dr. Lazar's financial condition at the relevant time, indicates he did not have the present ability to repay the debt. He testified that his income was low, his wife was working only sporadically, and his debts were high. However, Dr. Lazar also testified that over the years his income fluctuated. In particular, he often had to wait for payment from his patients' insurance companies and therefore it was difficult to predict what his income would be at a particular time. To offset this fluctuation, Dr. Lazar would use credit cards to meet his current expenses when his income was low. He further testified that he paid down those debts and that when he borrowed the money at issue here he did so with the expectation that he would repay the debts when he was able. In fact, Dr. Lazar continued to make payments on the three credit cards through June of 1994. Moreover, the bankruptcy court judge "was impressed with Dr. Lazar's demeanor on the witness stand" and therefore found that he "did not act in bad faith when he used the credit card prior to March 25, 1994." Thus, the record supports a finding that although Dr. Lazar may not have been able to repay the debts when they were incurred, he had an intent to repay coupled with a legitimate expectation that he would eventually be able to do so. Finally, appellant did not present any evidence that the charges made were above Dr. Lazar's credit limit.

The gravamen of the bankruptcy court's inquiry, and the question the above factors help to focus, is whether Dr. Lazar subjectively expected his income to rise such that he would be able to repay NBC for the charges he was making. *See Pursley*, 158 B.R. at 668 (noting that intent under § 523(a)(2)(A) "can be proven only by circumstantial evidence indicating a subjective intent on the part of the Debtor to deceive the merchant or card issuer"). This court holds that in light of Dr. Lazar's long history of incurring and repaying credit card and other debt, including the debt on the cards at issue here, his and his wife's fluctuating income, and his "impress[ive]" testimony, the bankruptcy court did not commit clear error in finding that Dr. Lazar did not possess the intent to deceive NBC when he made credit card purchases prior to March 25, 1994. Therefore, this court will not disturb the finding of dischargeability of the resulting debts.

### III. *Conclusion*

For the foregoing reasons, the judgment of the bankruptcy court is AFFIRMED.

IT IS SO ORDERED.