In re Christopher E. HENSLEY, Debtor.

AT & T UNIVERSAL BANK, Plaintiff,

v.

Christopher Eric HENSLEY, Defendant.

Bankruptcy No. 95–33249.
Adv. No. 96–3007.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Sept. 30, 1996.

Javitch, Block, Eisen & Rathbone, Robert K. Hogan and Bruce R. Freedman, Cleveland, Ohio, for Plaintiff.

Christopher M. Hawk, Dayton, Ohio, for Defendant/Debtor.

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WILLIAM A. CLARK, Chief Judge.

This matter is before the court upon the defendant's motion for summary judgment. The court has jurisdiction pursuant to 28 U.S.C. § 1334 and the standing order of reference entered in this district. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I)—determinations as to the dischargeability of particular debts.

### PROCEDURAL POSTURE

On January 12, 1996, plaintiff AT & T Universal Bank filed a "Complaint to Determine Dischargeability of Debt" against defendant/debtor Christopher Eric Hensley. In its complaint, AT & T alleges that:

4. Defendant, Christopher Eric Hensley incurred thirteen (13) purchases and six (6) cash advances on the credit card between the period of June 12, 1995, and July 10,

1995, at a time when Debtor had no ability to pay and knew or should have known of no ability to pay, and without any intention of paying thereof. . . .

5. Debtor's use of the card to obtain credit in the amount of $2,640.15 constituted a fraud against Plaintiff by the Defendant.

Doc. # 1.

Presently before the court is "Defendant's Motion for Summary Judgment" (Doc. # 7) which contains the following affidavit of the debtor:

1. I obtained the credit card from Plaintiff in accordance with Plaintiff's procedures.

2. I had the credit card from Plaintiff for some time and had charged items on the card and had paid it off in full.

3. I used the card in accordance with the instructions of the Plaintiff and did not exceed my credit limit.

4. I intended to repay Plaintiff at the time of the charges but was unable to make the payments.

Doc. # 7.

Plaintiff AT & T contends that summary judgment should not be granted because there are genuine issues as to material facts. In support of its position, Plaintiff has submitted the affidavit of Ron Lewis, a Senior Bankruptcy Associate for Plaintiff. That affidavit reads, in part, as follows:

3. In issuing the credit card in question and making a line of credit available to Christopher E. Hensley, Plaintiff and/or its agents obtained a copy of Christopher Hensley's credit bureau report(s) and Plaintiff relied on the financial information contained in said report in authorizing the issuance of the credit card;

4. A true and accurate copy of the twelve month history of Defendant's account between October 12, 1994, and September 12, 1995, is attached hereto as Exhibit "A";

5. Between approximately October 12, 1994, and July 12, 1995, Defendant Hensley made various purchases on the account in question;

6. During the same time frame, Defendant made payments on the account equal to or exceeding the minimum payment re-

quired by the agreement by which credit was extended to him and, in fact, the balance due and owing on the account as of his June 12, 1995, monthly statement had been reduced to zero;

7. As a result of Defendant's payment history and in reliance thereon, Plaintiff continued to make credit available to Defendant;

8. Between June 12 and July 10, 1995, Defendant incurred charges, took cash advances and incurred finance charges in the amount of $2,726.19, thereby exceeding his credit limit of $2,500.00 . . . ;

9. Thereafter, Defendant made one additional payment on the account on July 28, 1995, prior to filing his chapter 7 Bankruptcy Petition on September 21, 1995, which was seventy-three (73) days after the last purchase on the account by Defendant;

10. When Defendant did not make his required monthly minimum payments on the account in respect of monthly statements dated August 12, 1995, and September 12, 1995, Plaintiff referred his account to its internal collection department on or about September 13, 1995;

11. Plaintiff shall sustain a loss in the amount of $2,640.15 in the event the debt owed by Defendant is discharged.

Doc. # 9.

## CONCLUSIONS OF LAW

■ Section 523(a)(2)(A) of the Bankruptcy Code provides that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a

statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

In the Sixth Circuit it is well established that in order to except a debt from discharge under § 523(a)(2)(A):

> the creditor must prove that the debtor obtained money through a material misrepresentation that at the time the debtor knew was false or made with gross recklessness as to its truth. The creditor must also prove the debtor's intent to deceive. Moreover, the creditor must prove that it reasonably relied on the false representation and that its reliance was the proximate cause of the loss.

*Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 961 (6th Cir.1993) (citations omitted). Since *In re McLaren* was decided, however, the Supreme Court has held that the level of a creditor's reliance on a fraudulent misrepresentation necessary to render a debt nondischargeable under § 523(a)(2)(A) of the Bankruptcy Code is "justifiable reliance" rather than the more demanding standard of "reasonable reliance." *Field v. Mans,* —— U.S. ——, ——, 116 S.Ct. 437, 439, 133 L.Ed.2d 351 (1995). In addition, the party seeking to establish that a debt is nondischargeable under § 523 of the Bankruptcy Code must do so by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

▇▇▇ Of critical importance in the instant case is whether the debtor possessed an intent to deceive AT & T at the time he incurred the credit card charges at issue. Assessment of the debtor's intent requires an examination of all the circumstances of the case, and the court finds the following list of non-exclusive factors to be useful in making such an inquiry:

1. The length of time between the charges made and the filing of bankruptcy;

2. Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

3. The number of charges made;

4. The amount of the charges;

5. The financial condition of the debtor at the time the charges are made;

6. Whether the charges were above the credit limit of the account;

7. Whether the debtor made multiple charges on the same day;

8. Whether or not the debtor was employed;

9. The debtor's prospects for employment;

10. Financial sophistication of the debtor;

11. Whether there was a sudden change in the debtor's buying habits; and

12. Whether the purchases were made for luxuries or necessities.

*Chase Manhattan Bank (USA) NA v. Doggett (In re Doggett)*, 75 B.R. 789, 792 (Bankr. S.D.Ohio 1987) (quoting *Chase Manhattan Bank (U.S.A.) N.A. v. Carpenter (In re Carpenter)*, 53 B.R. 724, 730 (Bankr.N.D.Ga. 1985)).

AT & T states that "[a]lthough Defendant contends he intended to repay Plaintiff at the time the charges were incurred, Plaintiff submits that there are other circumstances which belie such an intent so that Defendant's intent is a material issue of fact which remains disputed" and that the following factors "support a finding that Defendant had no intention of repaying Plaintiff" (Doc. # 10 at 5–6):

—the amount of the charges and cash advances exceeded the Defendant's credit line of $2,500;

—multiple charges and/or cash advances were made on the same day;

—charges and cash advances were incurred in a relatively short time before the Defendant filed his bankruptcy petition;

—within a thirty day period Defendant used his credit card 19 times;

—because of the debtor's inability to repay the Plaintiff and his bankruptcy filing, Defendant's financial condition at the time the charges were made was poor.

*Id.* at 5.

▇▇▇ While it is true that the debtor's balance of charges of $2,640 exceeded his ap-

proved credit limit of $2,500, the court finds the $140 of excess charges to be *de minimis* relative to the approved credit line and of no assistance in determining the debtor's intent.

AT & T also refers the court's attention to "multiple" charges made by the debtor on June 12, 1995, June 22, 1995, June 23, 1995, and June 30, 1995. Plaintiff's Exhibit B reveals the following purchases on those dates:

| June 12 | $42.60 | Sun TV |
| | $70.00 | Red Lobster |
| June 22 | $ 8.24 | Sinclair College–Bookstore |
| | $24.34 | Sinclair College–Bookstore |
| June 23 | $17.30 | Sunoco |
| | $75.27 | K–Mart |
| June 30 | $24.47 | All About Sports |
| | $29.14 | K–Mart |
| | $56.56 | Kroger |

■ While there were four days that "multiple" charges were made, on three of these days only two purchases were made and on the fourth day three transactions were conducted. In addition, on none of those days did the purchases total more than $113. As such, the court finds no indication from this factor that the debtor was intending to defraud AT & T.

With respect to the fact that the purchases before the court were made two to three months prior to the debtor's filing of a petition in bankruptcy, the court agrees with the court's position in *GM Card v. Cox (In re Cox)*, 182 B.R. 626 (Bankr.D.Mass.1995):

> This is not to say a debtor should be permitted to engage in a wild spending spree shortly before bankruptcy. Congress calls this "loading up" and in 1984 enacted subparagraph (C)[1] to provide a remedy. In the Bankruptcy Reform Act of 1994 ... Congress enlarged the creditor's rights under subparagraph (C), but not to a degree that would affect what was done here. Purchases of "luxury goods and services" totaling more than $1,000 are now presumptively nondischargeable if made within 60 days of bankruptcy. So too are cash advances of more than $1,000

obtained within 60 days of the filing. Because of its specified time periods, specific dollar amounts and definition of "luxury goods and services," subparagraph (C) is relatively uncomplex. That makes its application quite predictable. I conclude Congress intended subparagraph (C) to provide the exclusive remedy against "loading up." Many of the circumstances considered by courts as indicators of lack of intent to pay under subparagraph (A) relate to what Congress believes to be relevant under subparagraph (C)—for example, the proximity of the charges to the bankruptcy filing and the nature of the goods or services as luxuries. The courts formulated these indicators of intent prior to the enactment of the 1984 amendment inserting subparagraph (C). With the enactment of subparagraph (C), the indicators should be relegated to history. I therefore decline to extend to subparagraph (A) factors which are relevant under subparagraph (C).

*Id.* at 635.

■ The evidence that the debtor used his credit card 19 times in a 30 day period is in and of itself of no assistance to the court. Plaintiff has provided no context for this number; no evidence has been offered as to the average number of monthly transactions conducted by plaintiff's customers nor has it been shown whether the debtor's conduct was a significant deviation from that of the typical or average customer. In addition, and more importantly, AT & T has not shown whether this number of transactions was typical for the debtor himself.

■ Presumably the financial condition of the debtor was not good when these purchases were made. Nevertheless, AT & T has provided no evidence with respect to the debtor's financial condition at the time the credit card charges were made. In any event, this factor alone is of course insufficient to support a finding of intent to defraud

---

1. "[F]or purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $1,000 for 'luxury goods or services' incurred by an individual debtor on or within 60 days before the order for relief under this title, or cash advances aggre-

gating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 60 days before the order for relief under this title are presumed to be nondischargeable; ...." 11 U.S.C. § 523(a)(2)(C).

the plaintiff. No evidence has been offered with regard to the remaining factors customarily utilized by this court to assess the debtor's intent.

 Federal Rule of Civil Procedure 56(c) reads, in part, as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In the Supreme Court's view,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In short, a movant may challenge the opposing party to "put up or shut up" on a critical issue, and if, after being afforded a sufficient time for discovery, the respondent does not "put up," summary judgment is proper. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

In the instant case, AT & T has failed to make a showing that the debtor intended to deceive AT & T. This is, of course, an essential element of the plaintiff's case, and plaintiff's failure to establish the element of fraudulent intent renders moot a discussion of the other elements of proof under § 523(a)(2)(A) of the Bankruptcy Code and entitles the defendant/debtor to summary judgment.

For the foregoing reasons, it is hereby ORDERED that defendant's motion for summary judgment is GRANTED.