In re Joseph FALCONE, Ruby Lena
Falcone aka Wade, Debtors.

FIRST MERIT CORPORATION/FIRST
NATIONAL BANK OF OHIO,
Plaintiffs,

v.

Joseph FALCONE, Defendant.

Bankruptcy No. 96–62084.
Adversary No. 96–6157.

United States Bankruptcy Court,
N.D. Ohio.

March 12, 1997.

[black bar redaction]

Phillip D. Schandel, Canton, OH, for Plaintiff.

Donald M. Miller, Canton, OH, for Defendant.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

Presently before the Court is the Complaint of Plaintiff, First Merit Corporation/First National Bank of Ohio (First Merit), seeking a finding of nondischargeability of the unsecured credit card debts of Defendant, Joseph Falcone, under Sections 523(a)(2)(A), (B) and (C) of Title 11 of the United States Code. A trial was conducted on February 25, 1997, and the matter was taken under advisement. For the reasons stated below, First Merit's request for relief will be denied.

### FACTS

Mr. Falcone is a 77–year old man who retired in 1968 from his job at the Timken Company in Canton, Ohio. He has experienced numerous severe medical problems in the last five years. Due to these problems, he has undergone triple bypass surgery, a colostomy procedure, has had a pacemaker installed, and has had a tumor removed. Mr. Falcone lives in what can best be described as a state of profound confusion. While he is aware of certain events, such as the recent death of his wife, he is unsure of the present year or the name of the financial institution that has brought suit against him.

Mr. Falcone does not remember establishing a credit relationship with First Merit. The evidence shows, however, that he applied for a credit card on July 9, 1993. Mr. Falcone's petition for relief under Chapter 7 of Title 11 of the United States Code, which was joint with his now-deceased wife, Ruby L. Wade, lists numerous debts that may have been initially incurred prior to his credit application with First Merit. Schedule F attached to his petition lists an unsecured obligation to Aultman Hospital from 1991 in the amount of $6,700.00, while Mr. Falcone listed total medical debts of only $350.00 on his 1993 First Merit credit application. He stated at trial that he believed that his schedule F was correct and that he did, indeed, owe Aultman hospital $6,700.00 in 1991. However, Mr. Falcone may be confused. With the numerous medical procedures he has undergone in recent years, it is quite possible that at least a portion of the debt, and possibly all but the $350.00 as claimed on the application, was incurred after the 1993 credit application. No other evidence has been presented to show that Mr. Falcone's 1993 statement of his of medical debts was inaccurate.

Likewise, beyond the obligations scheduled with his petition, no evidence has been placed before the Court to demonstrate that any other debts incurred prior to the 1993 credit application were omitted from that application. His petition merely states the years, from 1990 to 1996, in which accounts were active and debts might have been incurred. The present amounts claimed by creditors are also listed.

The evidence established at trial shows that Mr. Falcone does not remember many of the credit relationships listed on his petition, let alone the amount of his debts or the dates on which they were incurred. Furthermore, a witness for First Merit testified that the bank obtained a credit report on Mr. Falcone in 1993 when his application was approved. While a copy was not placed in evidence, the representative of First Merit stated under oath that the report did not contain any debts not listed on Mr. Falcone's credit application.

An examination of Mr. Falcone's credit records with First Merit reveals sporadic credit card use but a constant slide toward greater indebtedness. After a balance transfer from another card, he used the account exclusively for cash advances and rarely paid more than the minimum payment due each month. However, he did stay current on the required payments until shortly before the petition was filed. No evidence has been presented to indicate that he understood the consequences of his borrowing. Such com-

prehension appears impossible in Mr. Falcone's present mental state. When questioned under oath, Mr. Falcone forcefully stated that, until shortly before the filing of his petition, he intended to honor all of his obligations.

### DISCUSSION

The Court has jurisdiction in this adversary proceeding by virtue of 28 U.S.C. § 1334(b) and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under Title 28 U.S.C. § 157(b)(2)(I). This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The principal issue before the Court is whether Mr. Falcone's debts are dischargeable in this Chapter 7 case. Under Section 523(a)(2), a discharge under 11 U.S.C. § 727 does not discharge an individual debtor from any debt:

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing-

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive or

(C) for purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $1,000 for "luxury goods or services" incurred by an individual debtor on or within 60 days before the order for relief under this title, or cash advances aggregating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 60 days before the order for relief under this title, are presumed to be nondischargeable; "luxury goods or services" do not include goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor; an extension of consumer credit under an open end credit plan is to be defined for purposes of this subparagraph as it is defined in the Consumer Credit Protection Act; . . .

## I. Dischargeability under 11 U.S.C. § 523(a)(2)(A)

To except a debt from discharge under Section 523(a)(2)(A), a creditor must prove (1) that the Debtor obtained money, property, services, or an extension, renewal, or refinancing of credit, (2) through a material misrepresentation, (3) that the debtor knew said misrepresentation was false or that the misrepresentation was made with gross recklessness as to its truth, (4) that the debtor intended to deceive the creditor, (5) that the creditor justifiably relied on the false representation, and (6) that its reliance was the proximate cause of loss. *Field v. Mans,* —— U.S. ——, ——, 116 S.Ct. 437, 439, 133 L.Ed.2d 351 (1995) (establishing that the proper standard is justifiable reliance rather than reasonable reliance); *Longo v. McLaren (In re McLaren),* 3 F.3d 958, 961 (6th Cir.1993) (citations omitted). The creditor bears the burden of proof as to each of these elements by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).

First Merit asserts that Mr. Falcone represented that he had the ability to repay his debts at the time they were incurred, when in reality, he was insolvent when the account was opened and never had the intent or ability to repay. However, First Merit has presented no evidence to show that Mr. Falcone was insolvent in 1993. As stated above, Mr. Falcone's schedules are inconclusive and cannot be relied upon to determine a date when he became insolvent.

It is clear that Mr. Falcone did incur the charges and may have known that any advanced funds were intended as loans that

would have to be repaid with interest. Furthermore, First Merit's reliance on Mr. Falcone's representations may have been proper. However, an essential factor in determining if Mr. Falcone's debts are nondischargeable under Section 523(a)(2)(A) turns on whether he knew he would not be able to repay the charges and intended to deceive First Merit.

In similar cases, courts have suggested numerous factors to be examined to determine if a debtor acted with intent to deceive:

1. The length of time between the charges made and the filing of bankruptcy;

2. Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

3. The number of charges made;

4. The amount of the charges;

5. The financial condition of the debtor at the time the charges are made;

6. Whether the charges were above the credit limit of the account;

7. Whether the debtor made multiple charges on the same day;

8. Whether or not the debtor was employed;

9. The debtor's prospects for employment;

10. Financial sophistication of the debtor;

11. Whether there was a sudden change in the debtor's buying habits; and

12. Whether the purchases were made for luxuries or necessities.

*AT&T Universal Bank v. Hensley (In re Hensley)*, 201 B.R. 494, 497 (Bkrtcy.S.D.Ohio 1996); *Chase Manhattan Bank N.A. v. Doggett (In re Doggett)*, 75 B.R. 789, 792 (Bkrtcy. S.D.Ohio 1987) (quoting, *Chase Manhattan Bank N.A. v. Carpenter (In re Carpenter)*, 53 B.R. 724, 730 (Bkrtcy.N.D.Ga.1985)).

■ When applying these factors to this case, the overriding consideration of the Court is Mr. Falcone's financial sophistication. In his present mental state, he is unable to handle his finances or manage credit. While his faculties may have been less diminished in 1993, he was never a sophisticated

financial consumer. He never made a large number of charges on the account. Total indebtedness to First Merit is little more than $4,000.00. His charges were sporadic and diffused over a long time period. When the borrowing limit on his account was reached, it was quickly increased by First Merit without an investigation using a new credit report. While the use of the funds borrowed by Mr. Falcone is unclear, no evidence of a sudden change in his buying habits close to bankruptcy has been presented. His borrowing nearer to the petition date was higher than over the life of the account but likely done, at least arguably, while under the influence of the dementia from which he currently suffers. Based on these factors, the Court concludes that Mr. Falcone had no intent to deceive First Merit. The bank is not entitled to recovery under Section 523(a)(2)(A) even if Mr. Falcone made statements that could be classified as material misrepresentations.

## II. Dischargeability under 11 U.S.C. § 523(a)(2)(B)

■ A successful cause of action under Section 523(a)(2)(B) requires a creditor's reliance on a debtor's written statement of his financial condition that is materially false and made with the intent to deceive. 11 *U.S.C.* § 523(a)(2)(B). In considering this claim, the Court must take into account whether the debtor possessed an intent to deceive or acted with gross recklessness. *Martin v. Bank of Germantown (In re Martin)*, 761 F.2d 1163, 1167 (6th Cir.1985). In this case, First Merit claims that Mr. Falcone's 1993 credit application meets the requirements of Section 523(a)(2)(B) because it did not include all of the debts that were known to Mr. Falcone at the time the application was made.

■ First Merit failed to prove this claim by a preponderance of the evidence. As found above, the petition's schedules and the evidence presented at trial do not pin down the dates upon which Mr. Falcone incurred debts. The Court has no means by which to determine that the information placed on Mr. Falcone's 1993 credit application was incorrect. The Court finds it significant that a First Merit employee stated at trial that a

credit report was obtained for Mr. Falcone in 1993 and contained no debts not listed on his application. In addition, given Mr. Falcone's present mental condition, insufficient evidence has been presented for the Court to find that Mr. Falcone knew the extent of his debts in 1993 and intended to deceive First Merit when the application was completed.

### III. Dischargeability under 11 U.S.C. § 523(a)(2)(C)

 Section 523(a)(2)(C) creates a presumption that all cash advances aggregating over $1,000.00 that are obtained on or within sixty days of the filing of a petition for relief are nondischargeable. 11 U.S.C. § 523(a)(2)(C). Despite the claims of First Merit, the provisions of Section 523(a)(2)(C) do not operate to create a presumption of nondischargeability in the case at bar. The sixty day period prior to the filing of Mr. Falcone's petition began on June 14, 1996. An examination of his financial records reveals that less than $1,000.00 was obtained during this time period. As more than $1,000.00 was not advanced, the presumptive effects of 523(a)(2)(C) do not attach. In light of the unambiguous time limits for this cause of action that have been set by Congress, the Court cannot recognize the argument of First Merit that the provisions of Section 523(a)(2)(C) should be applied to Mr. Falcon because he purposely delayed the filing of his petition.

### CONCLUSION

The Court finds that First Merit has failed to meet its burden of proof under the various portions of Section 523(a)(2) that have been advanced. The Court therefore concludes that First Merit's prayer for relief must be DENIED.

An Order in accordance with the foregoing shall issue forthwith.

### ORDER

For the reasons set forth in the accompanying Memorandum of Decision, the Court finds that Plaintiff, First Merit Corporation/First National Bank of Ohio, has failed to meet its burden of proof. Its prayer for relief is hereby DENIED.

 The court further finds, however, the position of First Merit Corporation/First National Bank of Ohio to have been substantially justified within the meaning of Section 523(d) of Title 11 of the United States Code. Therefore, the request of Defendant, Joseph Falcone, for costs and attorney fees is **DENIED**.

IT IS SO ORDERED.