In re Roy D. HIGGS, Debtor.

**MID–AMERICAN NATIONAL BANK & TRUST COMPANY, Plaintiff,**

v.

**Roy D. HIGGS, Defendant.**

**Bankruptcy No. 83–0042.**
**Related Case 82–02378.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

April 19, 1984.

Jerry W. Lee, Bowling Green, Ohio, for plaintiff.

Raymond L. Beebe, Toledo, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Complaint to Determine Dischargeability filed by the Mid-American Bank and Trust Company. A Trial was held in this case, at the conclusion of which the parties agreed to submit the case to the Court based upon the evidence taken and the submission of certain documentary evidence that was not available at that time. The parties were also requested to file any written arguments they wished the Court to consider; however, only the supplemental evidence has been received. The Court has reviewed the record along with the additional documents and finds that for the following reasons the debt in question should be held nondischargeable in part.

## FACTS

The facts in this case do not appear to be in serious dispute. On November 9, 1978, the Defendant-Debtor was issued a credit card by the Plaintiff. At the time of issuance the ceiling on the line of credit was established at Twelve Hundred and no/100 Dollars ($1,200.00). It was indicated at Trial that over the course of the Debtor's relationship with the Plaintiff the account's history was normal and unremarkable. However, between June of 1982, and the time the Debtor's account was closed in January of 1983, the Debtor's account reflects the following activity:

| Reporting Date | Previous Balance | Payments | Charges | Monthly Finance Charge | New Balance |
|---|---|---|---|---|---|
| 7/28/82 | 415.16 | | 175.90 | 8.33 | 599.39 |
| 8/28/82 | 599.39 | 41.00 | 51.35 | 10.04 | 619.78 |
| 9/28/82 | 619.78 | | 5.00 | 10.26 | 635.04 |
| 10/28/82 | 635.04 | | 365.00 | 11.10 | 1,104.14 |
| 11/28/82 | 1,104.14 | | 864.73 | 22.20 | 1,898.07 |
| 12/28/82 | 1,898.07 | | 1,010.43 | 41.88 | 2,950.38 |
| 1/28/83 | 2,950.38 | | | 44.03 | 2,994.41 |

Although it was not offered into evidence, the Plaintiff's representative testified that on either October 21, 1982, or November 5, 1982, a letter was sent to the Debtor which indicated that the Debtor had exceeded the account's credit ceiling. The letter also requested that no further charges be made against the account until it was brought under the previously prescribed limit. On November 9, 1982, the Debtor filed his voluntary Chapter 11 Petition with this Court. As it can be seen from the account's history, the then Debtor-In-Possession continued to credit purchases against the account through the month of November, 1982. At some time in early December, 1982, the Debtor's account was closed. On March 2, 1983, the Debtor's case was converted to a Chapter 7 liquidation proceeding.

## LAW

The present Complaint seeks a determination of dischargeability of the debt created by the Debtor's purchases on the Plaintiff's line of credit. Specifically, the Plaintiff alleges that the purchases which significantly escalated the previous balance on the account were made without any intent to pay for the property or services obtained. This allegation of nondischargeability is based on the provisions of 11 U.S.C. § 523(a)(2)(A) which states in pertinent part:

"A discharge under section 727, 1141, or 1328(B) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud ..."

 It is well established that in Order to demonstrate fraudulent conduct, it must be shown that there was 1) a representation made, 2) knowledge of its falsity, 3) an intent to deceive, 4) reasonable reliance on the representation, and 5) loss or damages as a result of the reliance. *Chalmers v. Benson (In re Benson)*, 33 B.R. 572 (Bkrtcy.N.D.Ohio 1983). It is also well established that when a purchase is made on credit the purchaser impliedly represents to the seller and the financing institution an intent and ability to pay for the purchase. *Associated Dry Goods Corp. v. Harper (In re Harper)*, 19 B.R. 207 (Bkrtcy.M.D.Fla. 1982), *Ohio Citizens Bank v. Satterfield (In re Satterfield)*, 25 B.R. 554 (Bkrtcy.N.D.Ohio 1982), *Maas Brothers, Inc. v. Lay (Matter of Lay)* 29 B.R. 258 (Bkrtcy.M.D.Fla.1983). Credit purchases made without the requisite intent or ability to repay the obligation created thereby are actions which constitute fraudulent pretenses within the contemplation of the nondischargeability provisions. *Associated Dry Goods Corp. v. Harper*, supra, *Southeast Services, Inc. v. West (In re West)*, 31 B.R. 426 (Bkrtcy.S.D.Fla.1983). Although the exceeding of a credit limit is not, in and of itself, indicative of an intent to deceive, it is a circumstance which may be considered in determining whether or not the intent to repay existed. *Ohio Citizens Bank v. Satterfield*, supra.

 In the present case, it is undisputed that the Debtor established a credit relationship with the Plaintiff and made purchases against his account. By doing so he made the representation that he intended and had the ability to repay for those purchases. Considering the frequency and amount of purchases made in the six months prior to the closing of his account, as well as their proximity to the filing of his petition, it can be inferred, see *Strawbridge & Clothier v. Caivarelli (In re Ciavarelli)*, 16 B.R. 369 (Bkrtcy.E.D.Pa.1982), that the Debtor had no intent to pay for the purchases made during that period. The fact that he continued an enlargement of the account subsequent to the filing of his petition further signifies an intention not to pay for the purchases. In this same respect, knowledge of this false intent can be inferred from these same facts. It is also apparent that the Plaintiff has suffered a loss as a result of the misrepresentations by virtue of the fact that it has extended credit on behalf of the Debtor for which it has not been compensated. Moreover, the Debtor seeks to finalize the loss by having the debt discharged in bankruptcy. Therefore, it appears that four of the five elements of fraud are present.

The remaining element which must be present in order for the Plaintiff to prevail is that of reliance. As indicated in *Ohio Citizens Bank v. Satterfield*, supra, reliance, in a credit card financial arrangement, is necessarily limited to only infrequent inquiries by the lending institution as to the credibility of the purchases made on the card holder's account. Therefore, this element must be examined in the context of the relationship between the parties and the practical difficulties attendant to making the inquiries normally required by the standard for reasonable reliance.

When the Debtor's line of credit was opened, the Plaintiff relied on the Debtor's representations that he would and was able to repay any charges made on that account. As previously indicated, the majority of activity in the account during the time it was open was unremarkable. Although the documented portion of the account's history is somewhat abbreviated, it reflects that the Debtor maintained his debt at approximately half of the allowed amount. This favorable history permitted the Plaintiff to rely on the Debtors implied representations when the account neared its ceiling in September of 1982 (which was reflected on the October 28, 1982 statement).

However, at the end of October, 1982, the Debtor had exceeded his credit ceiling by approximately fifty percent (50%). Appropriately, the Plaintiff notified the Debtor of the excession and requested that no further charges be made until the account had been brought under that level. Ignoring that request, the Debtor continued to make charges against the account until it was closed by the Plaintiff in early December of 1982.

■ In view of the time periods which are presented in this case, the Court finds that the Plaintiff reasonably relied on the Debtor's prior performance, even though the Debtor had exceeded the limits of the account. The Plaintiff acted immediately to notify the Debtor when the account's limits were exceeded, and again acted promptly when it became apparent that its request was being ignored. By doing so the Plaintiff acted in a manner which is consistent with the requirements of reasonable reliance, both as to the Debtor's representations regarding his intent to pay and in protecting its own interests. Therefore, it must be concluded that the Plaintiff's reliance was reasonable under the circumstances of this case. It must also be concluded that inasmuch as all the elements of fraud have been shown, the debt should be held nondischargeable.

■ Although it has not been brought to the attention of this Court by either of the parties, it could be argued that any charge made by the Debtor subsequent to the filing of his Chapter 11 Petition was made in furtherance of the reorganization effort. If they were, such debts would become an administrative expense pursuant to 11 U.S.C. § 503(b). While this contention may have a degree of arguable validity, the facts of this case do not conform with the concept of pre-conversion expenses as contemplated by the Bankruptcy Code. Rather, the facts lead this Court to conclude that the charges made by the Debtor after he had filed his petition were part of a continuing course of conduct to defraud the Plaintiff. This conclusion is predicated on the history of the account and exemplified by the fact that the Debtor did not amend his schedules when the case was converted to reflect the post-Chapter 11 petition purchases. There has also been no showing that the pre-conversion expenses were, in fact, incurred on behalf of the reorganization. Accordingly, the provisions of 11 U.S.C. § 503(b) are not applicable.

The final question which must be resolved is the amount of damages. Although many decisions which have addressed the issue of credit card abuse have found the entire debt owing to the creditor nondischargeable, *see for example, Southeast Services, Inc. v. West,* supra, *Strawbridge & Clothier v. Caivaielli,* supra, *Southeast Services, Inc. v. Vegh (In re Vegh),* 14 B.R. 345 (Bkrtcy.S.D.Fla.1981), such a finding is not necessarily consistent with the elements of fraud in credit card cases. If a debtor established a line of credit and made regular payments on the account, then it cannot be said that the purchases so made were undermined with a fraudulent motive. However, if the debtor later formulates the wrongful intent and continues to make purchases, then only those purchases made under the guise of a proper motive are fraudulent. Accordingly, the Court must determine when, during the course of the Debtor's spending spree, did the Debtor develop his wrongful intent. *See, Ranier Bank v. Poteet (In re Poteet)* 12 B.R. 565 (Bkrtcy.N.D.Tex.1981).

■ The determination as to when the debtor did not intend to pay for his purchases is substantially similar to the determination of whether or not there was a fraudulent motive. In the present case the Debtor maintained his account at approximately Six Hundred and no/100 Dollars ($600.00) for a period of at least three (3) months prior to any significant increase. In September of 1982, the Debtor increased the account almost two-fold, albeit still under the account's limit. In October of 1982, the Debtor again doubled the account. In November of 1982, the Debtor increased the account by approximately fifty percent (50%). Such a history leads this Court to conclude that the Debtor's misrep-

resentations began with the purchases made in September of 1982, and continued until the account was closed. Accordingly, the nondischargeable portion of the debt is the difference between the last balance nearest to the "pre-runup" average ($635.04) and the final balance ($2,994.41), or Two Thousand Three Hundred Fifty-nine and 37/100 Dollars ($2,359.37).

In reaching these conclusions the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that the debt addressed by the Complaint be, and is hereby held NONDISCHARGEABLE in the amount of Two Thousand Three Hundred Fifty-nine and 37/100 Dollars ($2,359.37).