In re Rae A. BARTHOL, Debtor.

COLUMBUS MUNICIPAL EMPLOYEES FEDERAL CREDIT UNION, Plaintiff,

v.

Rae A. BARTHOL, Defendant.

Bankruptcy No. 2–85–03556.
Adv. No. 2–86–0024.

United States Bankruptcy Court,
S.D. Ohio, E.D.

March 10, 1987.

Michael Allerding, Westerville, Ohio, for plaintiff.

Webster S. Lyman, Columbus, Ohio, for defendant/debtor.

Larry E. Staats, Columbus, Ohio, trustee.

## OPINION AND ORDER ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF CREDIT CARD OBLIGATION

B.J. SELLERS, Bankruptcy Judge.

This matter is before the Court for decision following the trial of an action commenced by Columbus Municipal Employees Federal Credit Union ("the Credit Union"), seeking to except an obligation in the amount of $3,139.03 from the discharge issued in defendant Rae Barthol's Chapter 7 bankruptcy case. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

The Court makes the following findings of facts.

1. On March 18, 1985 Barthol applied to the Credit Union for a Visa credit card ("Visa"). That application was approved on April 10, 1985 and, two to three weeks later a Visa, with a maximum credit limit of $1000, was issued to Barthol by the Credit Union's bank in Florida.

2. Barthol began using the Visa on May 10, 1985 and continued that usage at least through October 30, 1985.

3. Barthol's outstanding charges, as billed on a monthly basis, first exceeded her $1000 credit limit on June 7, 1985, and her total outstanding obligations remained in excess of that limit thereafter.

4. Barthol made payments on her account totalling $315 from June through October of 1985 with her last payment, in the amount of $50, being made on October 21, 1985.

5. From June 28, 1985 through November 7, 1985, the Credit Union periodically assessed Barthol charges ranging from $10 to $30 for "over-limit penalties." Those penalty charges totalled approximately $400.

6. On September 18, 1985 Barthol's Visa was taken from her when she attempted to charge purchases made at a local department store. The Visa was never returned to her by the Credit Union.

7. The Credit Union never contacted Barthol in writing or by telephone with regard to the status of her account, but continued to mail her monthly statements of account through its bank processor.

8. Barthol was unemployed after May, 1985, and, on November 6, 1985, she filed a petition under the provisions of Chapter 7 of the Bankruptcy Code. The Credit Union was listed as a creditor in Barthol's schedule of liabilities.

The Credit Union seeks to except Barthol's obligation in the amount of $3,139.03 from the operation of her bankruptcy discharge by asserting that Barthol incurred that debt through false pretenses or actual fraud by using her Visa to purchase items for which she knew she was unable to pay and for which she intended not to pay. The Credit Union also alleges that certain

of Barthol's recent purchases were for "luxury" goods, and that such characterization renders nondischargeable the charges for those purchases. Barthol, on the other hand, denies any intent to defraud the Credit Union and maintains that she fully intended to pay her obligations as evidenced by payments made on her account for as long as she was able. The issues for the Court, therefore, are whether Barthol's conduct rises to the level of fraud or false pretenses within the meaning of 11 U.S.C. § 523(a)(2)(A) and whether amounts owing for certain of her purchases are presumed to be nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(C).

■ Proof of fraudulent conduct, by false representations or by the broader definition of false pretenses, requires a showing that (1) a representation was made, (2) the representation was known to be false, (3) the party making the representation intended to deceive, (4) the representation was relied upon, and (5) damage or loss resulted. *Chalmers v. Benson (In re Benson)*, 33 B.R. 572 (Bankr.N.D.Ohio 1983) and *Coman v. Phillips (In re Phillips)*, 804 F.2d 930, 932 (6th Cir.1986). In that connection it has often been held that the use of a credit card for purchases impliedly represents to the creditor that the user has the ability and the intention to repay the obligation thereby incurred. *Mid-American Nat'l. Bank & Trust Co. v. Higgs (In re Higgs)*, 39 B.R. 181 (Bankr.N.D.Ohio 1984); *H.C. Prange Co. v. Schnore (In re Schnore)*, 13 B.R. 249 (Bankr.W.D.Wis. 1981). Although intent to deceive must be proven by clear and convincing evidence, appropriate proof of such intent may be inferred from circumstantial evidence and implausible testimony. *First National Bank of Red Bud v. Kimzey (In re Kimzey)*, 761 F.2d 421, 424 (7th Cir.1985).

■ The Court finds that charges in excess of a user's credit card limit are not automatically nondischargeable without clear and convincing proof of fraudulent intent. With regard to $2145.45 owing to the Credit Union from Barthol for transactions occurring prior to September 18, 1985, including a penalty on September 24, 1985, the Court specifically finds that the Credit Union has not shown that Barthol possessed the necessary fraudulent intent. The Credit Union failed to show it had taken any steps to contact Barthol regarding the status of her account or the unacceptability of her balance prior to the seizure of her card, and Barthol's testimony that she continued to make payments on her outstanding balance and believed the Credit Union's imposition of charges for "over-limit balance" was the sanction for purchasing over her credit limit is, therefore, believable. *Dominion Bankshares Services v. Shrader (In re Shrader)*, 55 B.R. 608 (Bankr.W.D.Va.1985). The pattern of Barthol's purchases prior to September 18, 1985 did not vary from month to month, no pattern of "loading up" was evident, and her belief that she was authorized to use the card nullifies any finding of deceit. Therefore, $2145.45 of Barthol's outstanding obligation to the Credit Union is dischargeable in her bankruptcy.

■ The Court finds, however, that the required false representation and fraudulent intent were established by the Credit Union for purchases, including related penalty charges, totalling $993.58, made by Barthol after revocation of the credit card. Barthol lacked both the intent and the ability to pay for those purchases, and the Court does not believe Barthol's representations that she was unaware of her lack of authority to use her card number after the Visa was taken from her possession and returned to the Credit Union by a local store. Even though Barthol explained that this was her first experience with a credit card and that the Credit Union never expressly informed her that the card number could not be used after the card's retrieval on September 18, 1985, the Court finds that Barthol knew such usage was unauthorized. Although Barthol manifested her intention to repay the Credit Union in full, the Court finds that, without concurrent income to repay and absent authorization from the Credit Union to incur the debt, Barthol's actions were fraudulent. In this situation, the reliance element is inapplica-

ble, and the Credit Union's damage or loss can be definitely ascertained.

In addition, the Court believes that, at some time in late September or October, Barthol began to think about filing bankruptcy. Her testimony was that she decided to file bankruptcy after she received a bill from the Credit Union which she knew she could not pay. Her bill for November was received after the bankruptcy filing, and, therefore, the latest bill which she received prior to November was the Credit Union's statement dated October 11, 1985. After receipt of that statement, the Court finds that Barthol was considering bankruptcy and, therefore, would not have intended to repay the Credit Union for the charged items.

As an alternative ground, the Court further finds that $120.27 of Barthol's non-dischargeable obligation to the Credit Union was incurred for the purchase of floral arrangements which cannot be considered acquisitions reasonably required for the support of Barthol or her dependents. Therefore, those amounts are also nondischargeable pursuant to the presumption set forth in 11 U.S.C. § 523(a)(2)(C).

Based upon the foregoing, Barthol's obligation to the Credit Union is nondischargeable in the amount of $993.58. The remainder of Barthol's obligation, in the amount of $2145.45, shall be, and the same is, hereby discharged in her bankruptcy.

The Clerk is hereby ordered to enter judgment in accordance with this order.

IT IS SO ORDERED.