In re Andrew V. SPITLER and Jennifer L. Spitler, Debtors.

Fifth Third Bank of Northwest Ohio, N.A., Plaintiff,

v.

Andrew V. Spitler, et al., Defendants.

Bankruptcy No. 97–3160.
Related No. 96–33661.

United States Bankruptcy Court, N.D. Ohio.

Sept. 22, 1998.

Gregory Sova, Toledo, OH, for plaintiff.

Robert T. Kelsey, Sandusky, OH, for defendants.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court after Trial on the Plaintiff's Complaint to Determine Dischargeability of Debt. This Court has reviewed the arguments of counsel, exhibits, and the entire record of the case. Based upon that review, and for the following reasons, the Court finds that the debt at issue in this case is nondischargeable.

### FACTS

On or about November 27, 1993, Defendants obtained a Fifth Third Bank Visa Gold Card. From April to August of 1996 Defendants incurred substantial charges on the card, increasing the balance to Five Thousand Seven Hundred Thirty-eight and 15/100 Dollars ($5,738.15) as of August 23, 1996. At that time the Defendants' credit limit was Eight Thousand Dollars ($8,000.00). On September 4, 1996, the Defendants used their Citibank VISA credit card to make an electronic transfer payment of Five Thousand Seven Hundred Sixty Dollars ($5,760.00) on the Plaintiff's account, reducing the balance to $2.21. On October 30, 1996, the Defendants filed bankruptcy.

A review of Defendants' bankruptcy schedules reveals that as of the petition date Defendants had the following credit balances on their credit cards:

| Credit Account | Years Incurred | Approx. Balance |
|---|---|---|
| AT & T Universal Card | 1991 to 1996 | $ 9,300.00 |
| First Union Visa Gold | 1996 | $10,000.00 |
| Citibank Visa | 1994 – 1996 | $ 6,250.00 |
| Consumer's Edge BNY | 1994 – 1996 | $11,300.00 |
| MBNA America | 1994 – 1996 | $10,150.00 |
| | | $47,000.00 |

The Defendants' schedules also show that Defendants' current monthly income and expenses on the petition date were One Thousand Five Hundred Ninety Dollars

($1,590.00) and One Thousand Seven Hundred Ninety-seven Dollars ($1,797.00) respectively, revealing a monthly shortfall of Two Hundred Seven Dollars ($207.00). In a deposition conducted by virtue of this adversary proceeding, the Defendant, Andrew Spitler, testified that his present income and expenses were substantially the same at the time he incurred charges on the Plaintiff's account. When questioned about the reasons for the charges on this account, as well as on the other cards, Mr. Spitler repeatedly testified that he could not remember. Indeed, Mr. Spitler's testimony was little more than repeated non-responsive answers to questions, and assertions that he could not recall various aspects of his life. Mr. Spitler, who does admit to being the party responsible for most of the charges on the credit cards, was unable to explain how he expected to pay the balance on these cards. Further, Mr. Spitler did not explain why the charges were necessary, or give any explanation such as an emergency or unexpected monetary shortfall. Indeed, his testimony and the credit card account statements reveal that he purchased numerous luxury items, such as sports memorabilia, event tickets, and numerous videos or video games. Mr. Spitler's only explanation was that he expected to continue making monthly payments on the cards from his wages.

Mr. Spitler has also filed an Affidavit in Opposition to the Plaintiff's Motion for Summary Judgment. In it, Mr. Spitler does not provide a significant explanation for the excessive charges on the Plaintiff's and other credit cards other than to say that he filed bankruptcy because his minimum monthly obligations to all his creditors exceeded his ability to pay based upon income, and that when he incurred the charges on the Plaintiff's card, he fully intended to pay the Plaintiff.

However, the record reveals that Mr. Spitler would also make payments on some credit cards by using convenience checks of another. Mr. Spitler would also pay off the balance on some cards with other cards. The Defendants' account with the Plaintiff was paid off in this manner. This lead to the Chapter 7 Trustee's assertion of a preference action against Plaintiff, to recover the September 4, 1996 payment as a preferential transfer. Apparently by virtue of this Court's decision in *Yoppolo v. Greenwood Trust (In re Spitler)*, 213 B.R. 995 (Bankr. N.D.Ohio 1997), the Plaintiff remitted the proceeds of this payment to the Trustee. *Greenwood Trust* was another adversary proceeding arising from the Defendants' bankruptcy case, wherein the Trustee brought a preference action against yet another of the Defendants' credit card creditors, arguing that the balance transfer was a recoverable preferential payment. Holding that the creditor had no available defense to the preference action on the basis that the payment was only a balance transfer, this Court ruled in favor of the Trustee. Having remitted the September 4th payment, the Plaintiff in the case at bar now asserts the present dischargeability complaint.

### STATUTE

The Bankruptcy Code provides in pertinent part:

**11 U.S.C. § 523. Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing or credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

### DISCUSSION

Determinations as to the dischargeability of debts are core proceedings pursuant to 28 U.S.C. § 157. Thus, this case is a core proceeding.

This cause is before the Court upon the Plaintiff's Motion for Summary Judgment. A movant will prevail on a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), Fed. R.Civ.P. 56(c), Fed.R.Bankr.P. 7056. In order to prevail, the movant must demonstrate all elements of the cause of action. *R.E. Cruise, Inc. v. Bruggeman,* 508 F.2d 415, 416 (6th Cir.1975). Thereafter, the opposing party must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). See also *In re Bell,* 181 B.R. 311 (Bankr.N.D.Ohio 1995).

The Defendants make several arguments in opposition to the Plaintiff's Motion for Summary Judgment. First, the Defendants point out that the Plaintiff failed to file a proof of claim in the Defendants' bankruptcy case, which could have lessened its damages. However, the record in this case reveals that Fifth Third filed a Motion for Leave to File Proof of Claim Out of Time. The parties have also filed a Stipulation and Order allowing Fifth Third to file a proof of claim, which this Court signed.

■ Second, the Defendants argue that the Plaintiff has not shown that under existing case law it can prevail when in fact it was paid in full at the time the bankruptcy petition was filed, and the present debt arose only as a result of a successful preference action by the Chapter 7 Trustee. This Court disagrees. Once the payment was avoided, the Plaintiff returned to the legal position it had before the payment was made. It would be in contravention of the Bankruptcy Code and common sense to allow a fraudulent debtor to hide behind an avoidable payment in defense of a nondischargeability charge that the debt was fraudulently incurred. The fact that the Defendants made payments is, of course, a fact to be considered and given its appropriate probative value depending on the facts and circumstances of the particular case.

Third and finally, the Defendants argue that the Plaintiff has not shown that the charges made on the account were fraudulently incurred. The Defendants note that the charges were incurred over a five month period, that they did not consult with a bankruptcy attorney during this time, and that many of the charges were for food, clothing and transportation expenses. Finally, the Defendants argue that lack of an ability to repay when the charges were incurred is not, in itself a basis for fraud under § 523(a)(2)(A).

■ For a debt to be determined nondischargeable under § 523(a)(2)(A), the following elements must be shown: (1) that the debtor made false representations; (2) the debtor knew the representations to be false; (3) that the representations were made with the intention of deceiving the creditor; (4) that the creditor relied on the representations; and (5) that the creditor sustained the alleged injury as a proximate result of the representations having been made. *In re Phillips,* 804 F.2d 930, 932 (6th Cir.1986); *In re Martin,* 761 F.2d 1163, 1165 (6th Cir. 1985). The standard for the creditor's reliance upon the debtor's false representation is that of justifiable reliance. *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). A preponderance of the evidence is the standard to be applied to dischargeability exceptions. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 655, 112 L.Ed.2d 755 (1991).

■ Purchases made with a credit card carry with them an implied representation that the user has the ability and intent to pay for the charges incurred. *In re Rembert,* 141 F.3d 277, 281 (6th Cir.1998), *In re Higgs,* 39 B.R. 181, 184 (Bankr.N.D.Ohio 1984); *In re Chech,* 96 B.R. 781, 783 (Bankr.N.D.Ohio 1988); *In re Barthol,* 75 B.R. 305, 307 (Bankr.S.D.Ohio 1987); *In re Doggett,* 75 B.R. 789, 791 (Bankr.S.D.Ohio 1987); *In re Satterfield,* 25 B.R. 554, 557 (Bankr.N.D.Ohio 1982). See also *In re Ward,* 857 F.2d 1082, 1085 (6th Cir.1988). "Because direct proof of intent (i.e., the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred."

*In re Long,* 124 B.R. 54, 56 (Bankr.N.D.Ohio 1991) quoting *Matter of Van Horne,* 823 F.2d 1285, 1287 (8th Cir.1987); *In re Weaver,* 139 B.R. 677, 679 (Bankr.N.D.Ohio 1992). See also *Rembert,* 141 F.3d at 282.

The Court may consider a number of factors in determining whether a charge-card debt should be nondischargeable. The factors set out below are not intended to be exclusive, nor are all to be given equal weight. *In re Faulk,* 69 B.R. 743, 757 (Bankr.N.D.Ind.1986). See also *Rembert* at 282. Each decision must be made on a case by case basis, and individual factors may or may not be of assistance to the Court. *Faulk,* 69 B.R. at 757. These factors have been employed by a number of courts and are as follows:

1. The length of time between the charges made and the filing of bankruptcy;

2. Whether or not an attorney has been consulted concerning the filing of the bankruptcy before the charges were made;

3. The number of charges made;

4. The amount of the charges;

5. The financial condition of the debtor at the time the charges were made;

6. Whether the charges were above the credit limit of the account;

7. Did the debtor make multiple charges on the same day;

8. Whether or not the debtor was employed;

9. The debtor's prospects for employment;

10. Financial sophistication of the debtor;

11. Whether there was a sudden change in the debtor's buying habits; and

12. Whether the purchases were made for luxuries or necessities.

*In re Doggett,* 75 B.R. 789, 792 (Bankr. S.D.Ohio 1987); *In re Jacobs,* 196 B.R. 429, 433 (Bankr.N.D.Ind.1996) (citing *In re Williamson,* 181 B.R. 403 (Bankr.W.D.Mo. 1995)); *In re Carrier,* 181 B.R. 742, 748 (Bankr.S.D.N.Y.1995); *Faulk,* 69 B.R. at 757. See also *In re Pursley,* 158 B.R. 664, 668

(Bankr.N.D.Ohio 1993); *Satterfield,* 25 B.R. at 557–58 (Bankr.N.D.Ohio 1982).

It is clear that an ability to repay at the time the charges were incurred is not the sole basis for a determination of dischargeability under § 523(a)(2)(A). *Rembert,* 141 F.3d at 281 ("[W]e hold that the proper inquiry to determine a debtor's fraudulent intent is whether the debtor subjectively intended to repay the debt.") However, as noted supra, it is probative as to the Defendants' actual intent, which must necessarily be inferred from the surrounding circumstances. *Id.* at 282. In this case it is clear that the Plaintiff has met its initial burden upon summary judgment to show that the Defendants' debt was incurred without the intent of repay. The Defendants displayed a pattern of making purchases on their credit cards well in excess of any reasonable chance they could have to repay them. They also showed a pattern of using one credit card to make payments or pay off the balances on other cards, thus avoiding a default. Finally, many of the charges were incurred not for necessary costs of living, but purely for recreational and luxury goods and services.

Thus, the burden shifts to the Defendants to show a genuine issue of material fact for trial. It is abundantly clear that they offer no explanation which could justify their spending habits and show a subjective intent to repay the debts they were incurring. The non-responsive answers and lack of memory of Mr. Spitler in fact underscore the Plaintiff's assertions. The Defendants have not offered any explanation as to what circumstances caused them to spend so far beyond their ability to repay. Mr. Spitler would have this Court simply assume that spending well beyond your means for no good reason is natural and requires no explanation. This Court strongly disagrees. While there may be many circumstances under which an honest debtor would justifiably spend beyond an ability to repay based upon unfortunate events or misconceived optimism, this was clearly not the case here.

The balance of the Defendants' debt to the Plaintiff is approximately Five Thousand Seven Hundred Sixty Dollars ($5,760.00). However, the Plaintiff shall credit against

**6**

this amount any amounts it receives as distribution from the bankruptcy estate.

Accordingly, it is

**ORDERED** that the debt of the Defendants to the Plaintiff, Fifth Third Bank of Northwest Ohio, N.A., be, and is hereby, determined to be *NONDISCHARGEABLE* in the amount of Five Thousand Seven Hundred Sixty Dollars ($5,760.00).