In re Gregory A. **ROBINSON,** Debtor.

**Chase Manhattan Bank USA, NA, Plaintiff,**

v.

**Gregory A. Robinson, Defendant.**

**Bankruptcy Nos. 98–3011, 97–33893.**

United States Bankruptcy Court, N.D. Ohio.

Jan. 25, 1999.

Theodore K. Manley, Columbus, OH, for plaintiff.

Lawrence Gibson, Floor Columbus, OH, for Defendant.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court after Trial on Complaint to Determine Dischargeability and to Obtain Other Relief. This Court has reviewed the arguments of counsel, exhibits, and the entire record of the case. Based upon that review, and for the following reasons, the Court finds that the debt at issue is nondischargeable.

### FACTS

In February of 1995, Defendant applied to Plaintiff Chase Manhattan Bank for a MasterCard credit card account. Plaintiff issued this card to Defendant based on the information contained in the credit application. At the time Defendant applied for the card he was employed and earned an annual salary of approximately Twenty-five Thousand Dollars ($25,000.00). It does not appear that the information on the application was false.

The debt at issue in this case concern charges Defendant made on his account with Plaintiff in May of 1997. On May 7, 1997, Defendant went to several different banks and cashed nine separate cash advance checks, each in the amount of Five Hundred Dollars ($500.00), for a total draw of Four Thousand Five Hundred Dollars ($4,500.00). On May 27, 1997, Defendant similarly cashed two more checks for a total of Seven Hundred Seventy-five Dollars ($775.00). Between May 29 to May 30, Defendant wrote more checks, totaling One Hundred Eighty-six and 04/100 Dollars ($186.04). Defendant made no payments on the account, and filed his Chapter 7 bankruptcy petition on September 24, 1997. The balance on the account is presently Six Thousand Eight and 03/100 Dollars ($6,008.03). It is this debt which is at issue in this case.

At trial, account statements of Defendant's numerous credit card accounts were presented. It appears that during the period of January through June of 1997, Defendant made excessive charges on numerous credit accounts. These charges were largely for cash advances and unnecessary expenditures. The following is this Court's summary of the various charges, exclusive of finance charges, made on these other accounts between January and June of 1997:

| | GE Capital | Ford | Discover | Prime Option | JC Penny | First USA | MBNA |
|---|---|---|---|---|---|---|---|
| January | | 639.75 | | | | | |
| February | | 1,625.10 | | | | | |
| March | 909.75 | 1,989.68 | | 443.67 | | 532.00 | 50.00 |
| April | 693.55 | 98.55 | 5,351.63 | 6,950.01 | | 664.00 | |
| May | | 98.66 | | 134.52 | 1,357.82 | | |
| June | | 51.36 | | | | | 1,891.63 |
| | 1,603.30 | 4,503.10 | 5,351.63 | 7,528.20 | 1,357.82 | 1,196.00 | 1,941.63 |

These charges total $23,481.68. The following is this Court's summary of the payments made on these accounts between January and June of 1997:

| | GE Capital | Ford | Discover | Prime Option | JC Penny | First USA | MBNA |
|---|---|---|---|---|---|---|---|
| January | | 12.45 | | | | | |
| February | | 20.00 | | | | | |
| March | | 58.96 | | | | 149.00 | |
| April | | | 225.23 | | | 644.35 | |
| May | | 256.54 | | | | | |
| June | | | 121.00 | | 154.00 | 434.28 | |
| | | 347.95 | 346.23 | | 154.00 | 1,227.63 | |

These payments total $2,075.81. (Also note that the $644.35 payment on the First USA card is approximately equal to the cash advances taken on that card in that month.)

Defendant has an associates degree in a computer related field. He has been employed in this capacity on and off for several years. In Defendant's answers to interrogatories, Defendant attested to the fact that he was unemployed between October of 1996 and July of 1997. At trial, Defendant changed his testimony, even while still on the stand. This Court finds it very difficult to precisely determine when Defendant did or did not work. It is also clear that Defendant had little or no income during the periods in question. As to the Plaintiff's account, Defendant testified that he intended to draw over Four Thousand Dollars ($4,000.00) on the account to cover living and car expenses, but the bank would not let him do so all at once. Defendant claims this is why he went to several different banks and made the numerous withdrawals. However, it also appears from Defendant's testimony that he was living at home with his parents, that they were paying most or all the bills, and that they would even occasionally give him spending money.

At first, Defendant's testimony appeared to reflect that he was using cash advances for living expenses. Then, Defendant testified that he was making the charges in anticipation of particular employment possibilities which did not come through. Then, Defendant testified that he was drawing on the accounts to make gifts to friends. Then Defendant testified that he was simply engaged in "an interesting lifestyle." After a conference with his attorney, Defendant testified that he had a drug problem, and that the charges on the credit accounts could be attributable to this. Defendant produced no evidence of any treatment for drug dependency. This Court finds all of Defendant's testimony to be contradictory, and memory too scanty, to be given significant credence.

Defendant also testified that during the time the charges were incurred he maintained a brokerage account, funded with approximately Twelve Thousand Dollars ($12,000.00). Defendant testified to his investment in rather complex transactions, and managed to approximately break even in profits and losses. Defendant testified that at some time prior to his bankruptcy, he withdrew and spent this money as well, though he used none of it to make payments on his credit accounts.

## STATUTE

The Bankruptcy Code provides in pertinent part:

**11 U.S.C. § 523. Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing or credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

## DISCUSSION

Determinations as to the dischargeability of particular debts are core proceedings pursuant to 28 U.S.C. § 157. Thus, this case is a core proceeding.

 Plaintiff argues that Defendant's liability to it should be determined nondischargeable pursuant to § 523(a)(2)(A). For a debt to be determined non-dischargeable under § 523(a)(2)(A), the following elements must be shown: (1) that the debtor made false representations; (2) the debtor knew the representations to be false; (3) that the representations were made with the intention of deceiving the creditor; (4) that the creditor relied on the representations; and (5) that the creditor sustained the alleged injury as a proximate result of the representations having been made. *In re Phillips*, 804 F.2d 930, 932 (6th Cir.1986); *In re Martin*, 761 F.2d 1163, 1165 (6th Cir.1985). The standard for the creditor's reliance upon the debtor's false representation is that of justifiable reliance. *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). A preponderance of the evidence is the standard to be applied to dischargeability exceptions. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 655, 112 L.Ed.2d 755 (1991).

 Purchases made with a credit card carry with them an implied representation that the user has the ability and intent to pay for the charges incurred. *In re Rembert*, 141 F.3d 277, 281 (6th Cir. 1998), *In re Higgs*, 39 B.R. 181, 184 (Bankr.N.D.Ohio 1984); *In re Chech*, 96 B.R. 781, 783 (Bankr.N.D.Ohio 1988); *In re Barthol*, 75 B.R. 305, 307 (Bankr. S.D.Ohio 1987); *In re Doggett*, 75 B.R. 789, 791 (Bankr.S.D.Ohio 1987); *In re Satterfield*, 25 B.R. 554, 557 (Bankr.N.D.Ohio 1982). See also *In re Ward*, 857 F.2d 1082, 1085 (6th Cir.1988). "Because direct proof of intent (i.e., the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred." *In re Long*, 124 B.R. 54, 56 (Bankr.N.D.Ohio 1991) quoting *Matter of Van Horne*, 823 F.2d 1285, 1287 (8th Cir.1987); *In re Weaver*, 139 B.R. 677, 679 (Bankr.N.D.Ohio 1992). See also *Rembert*, 141 F.3d at 282.

 The Court may consider a number of factors in determining whether a charge-card debt should be nondischargeable. The factors set out below are not intended to be exclusive, nor are all to be given equal weight. *In re Faulk*, 69 B.R. 743, 755–757 (Bankr.N.D.Ind.1986). See also *Rembert* at 282. Each decision must be made on a case by case basis, and individual factors may or may not be of assistance to the Court. *Faulk*, 69 B.R. at 757. These factors have been employed by a number of courts and are as follows:

1. The length of time between the charges made and the filing of bankruptcy;

2. Whether or not an attorney has been consulted concerning the filing of the bankruptcy before the charges were made;

3. The number of charges made;

4. The amount of the charges;

5. The financial condition of the debtor at the time the charges were made;

6. Whether the charges were above the credit limit of the account;

7. Did the debtor make multiple charges on the same day;

8. Whether or not the debtor was employed;

9. The debtor's prospects for employment;

10. Financial sophistication of the debtor;

11. Whether there was a sudden change in the debtor's buying habits; and

12. Whether the purchases were made for luxuries or necessities.

*In re Doggett*, 75 B.R. 789, 792 (Bankr. S.D.Ohio 1987); *In re Jacobs*, 196 B.R. 429, 433 (Bankr.N.D.Ind.1996) (citing *In re Williamson*, 181 B.R. 403 (Bankr.W.D.Mo. 1995)); *In re Carrier*, 181 B.R. 742, 748 (Bankr.S.D.N.Y.1995); *Faulk*, 69 B.R. at 757. See also *In re Pursley*, 158 B.R. 664, 668 (Bankr.N.D.Ohio 1993); *Satterfield*, 25 B.R. at 557–58 (Bankr.N.D.Ohio 1982).

■■ It is clear that an ability to repay at the time the charges were incurred is not the sole basis for a determination of dischargeability under § 523(a)(2)(A). *Rembert*, 141 F.3d at 281 ("[W]e hold that the proper inquiry to determine a debtor's fraudulent intent is whether the debtor subjectively intended to repay the debt.") However, as noted supra, it is probative as to the Defendants' actual intent, which must necessarily be inferred from the surrounding circumstances. *Id.* at 282.

■ In the case at bar, this Court finds Defendant to have willfully incurred debts he had no intention to repay, so as to have a prolonged holiday which he termed "an interesting lifestyle." Upon a review of Defendant's testimony at trial, and the evidence in this case, this Court concludes that the debt to Plaintiff is nondischargeable.

In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

*ORDERED* that Defendant's debt to Plaintiff be, and is hereby, determined *NONDISCHARGEABLE* in the amount of Six Thousand Eight and 03/100 Dollars ($6,008.03).