**In re Wendy G. PENNELL, Debtor.**

**AT & T Universal Bank, Plaintiff,**

v.

**Wendy G. Pennell, Defendant.**

**Bankruptcy No. 97–3240.**

United States Bankruptcy Court, N.D. Ohio.

June 28, 1999.

738

Michael R. Fegen, Norwalk, OH, for defendant.

Bruce R. Freedman, Akron, OH, for plaintiff.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court after a Trial on the Plaintiff's Complaint to Determine Dischargeability of Debt. This Court has reviewed the arguments of counsel, exhibits, and the entire record of the case. Based upon that review, and for the following reasons, the Court finds that the debt at issue in this case is nondischargeable.

## FACTS

The Plaintiff issued the Defendant a credit card in 1993. Though the Defendant occasionally used the card, she kept the balance at or near zero through October of 1996. It is the charges that occurred in and after November of 1996 that are at issue in this case. The Plaintiff has supplied account statements which detail charges totaling the following amounts in each month:

| November, 1996 | $2,637.94 |
| December, 1996 | 823.16 |
| January, 1997 | 27.25 |
| February, 1997 | 379.73 |
| TOTAL | $3,868.08 |

During this time, Defendant made the following payments:

| December 23, 1996 | $1,000.00 |
| February 3, 1997 | 100.00 |
| February 26, 1997 | 175.00 |
| TOTAL | $1,275.00 |

The latest statement provided by the Plaintiff shows a balance of Four Thousand Eight Hundred Fifty Dollars and 09/100 ($4,850.09), with interest and late charges. Most of the charges made between November of 1996 and March of 1997 were made at home improvements stores such as Lowes or Action Lumber. However, the Plaintiff also points out that there was a One Thousand Fifty-six Dollars and 35/100 ($1,056.35) charge made at Circuit City of November 8, 1996 (the Defendant explains that this was for a stereo system, and that the December 23rd payment was made specifically to cover this charge). There was also a Three Hundred Seventy-nine and 64/100 ($379.64) charge made at International Diamond and Gold on December 23, 1996.

The Defendant filed for Chapter 7 bankruptcy protection on May 5, 1997. The Defendant listed general unsecured debts totaling Twenty-four Thousand One Hundred Seventy-nine Dollars ($24,179.00), most of which appear to be consumer credit accounts, including that of the Plaintiff. Most of these debts were incurred by March or April of 1997.

At trial, the Defendant explained that in November of 1996 she experienced a fire in the home of her and her husband which caused significant damage. She testified that the insurance proceeds did not cover the entire cost of the repairs, and that she and her husband personally undertook these repairs, purchasing material with her credit. She also testified that she and her husband were having marital difficulties at the time, and that in fact her husband was not even living with her at the time many, if not most, of the charges were made. He was, however, still undertaking the repairs on the home. The Defendant also testified that though she was not sure how she could pay the balance on the card, along with the balances on her other cards, she nevertheless felt it necessary to repair her home and make it suitable for herself (and her husband's) two (2) minor children. As of the date of trial, the Defendant and her husband have reunited and presently live together in this house.

At trial the Plaintiff pointed out that the Defendant did not list any fire loss on her statement of financial affairs, though a question specifically asks for this information. The Defendant's schedule of income also showed an unexplained deduction. Thereafter, this Court ordered the Defendant to amend her statements and sched-

ules to disclose and explain these items. She did amend these items. Attached to her amended statement of financial affairs, which now discloses the fire loss, is a handwritten explanation by her husband. It appears to explain that the Defendant and her husband received insurance proceeds as a result of the fire in the amount of Sixty Thousand Dollars ($60,000.00) for the damage to the house, and Twenty-eight Thousand ($28,000.00) for damage to personal property. The attachment also purports to detail Seven Thousand Five Hundred Sixty Dollars ($7,560.00) of expenses which were above the Sixty Thousand Dollar ($60,000.00) house loss payment. There was no detail or supporting documentation provided for the use of the house loss proceeds, or to support the additional expenses. As to the Twenty-eight Thousand Dollars ($28,000.00) personal property loss proceeds, the Defendant's husband provided the following explanation:

> I, Barry Pennell, spent most of the 28,000.00 w/out Wendy Pennell's knowledge. When we separated, I took the insurance money because Wendy was going to get the house. I bought some furnishings with this money. I was not working for over a month. Some of this money went for this. I also have a gambling problem and much of this money was lost gambling. Appliances for the house also came from this money. Clothing for Wendy, myself, and the children was also bought with this money. Many misc. items such as dishes, glasses, pots & pans, and other necessary items were also purchased. All of the items on the replacement list were in my possession, with the exception of appliances, at the time Wendy filed her petition for bankruptcy.

> /s/ Barry Pennell

The Defendant's amended schedule of current income reveals a total monthly income of One Thousand Five Hundred Four Dollars and 18/100 ($1,504.18) (if filled out correctly, this was her income on the petition date), and she testified that her income on the petition date was the same as it was during the time charges were made on the credit card. The Defendant's schedule of current expenditures reveals total monthly expenses of One Thousand Four Hundred Fifty-eight Dollars ($1,458.00). At trial, the Defendant testified that her income and expenses at the petition date are substantially the same as they were at the time the debt at issue was incurred.

### LAW

The Bankruptcy Code provides in pertinent part:

**11 U.S.C. § 523. Exceptions to discharge**

A discharge under section 727,1141, 1228(a), 1128(b), or 1328(b) of this title does not discharge an individual from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing or credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

### DISCUSSION

Determinations as to the dischargeability of debts are core proceedings pursuant to 28 U.S.C. § 157. Thus, this case is a core proceeding.

The Plaintiff brings this adversarial proceeding under § 523(a)(2)(A) of the Bankruptcy Code. 11 U.S.C. § 523(a)(2)(A). For a debt to be determined non-dischargeable under § 523(a)(2)(A), the following elements must be shown: (1) that the debtor made false representations; (2) the debtor knew the representations to be false; (3) that the representations were made with the intention of deceiving the creditor; (4) that the creditor relied on the representations;

and (5) that the creditor sustained the alleged injury as a proximate result of the representations having been made. *In re Phillips,* 804 F.2d 930, 932 (6th Cir.1986); *In re Martin,* 761 F.2d 1163, 1165 (6th Cir.1985). The standard for the creditor's reliance upon the debtor's false representation is that of justifiable reliance. *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). A preponderance of the evidence is the standard to be applied to dischargeability exceptions. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 655, 112 L.Ed.2d 755 (1991).

■■■ Purchases made with a credit card carry with them an implied representation that the user has the ability and intent to pay for the charges incurred. *In re Rembert,* 141 F.3d 277, 281 (6th Cir. 1998), *In re Higgs,* 39 B.R. 181, 184 (Bankr.N.D.Ohio 1984); *In re Chech,* 96 B.R. 781, 783 (Bankr.N.D.Ohio 1988); *In re Barthol,* 75 B.R. 305, 307 (Bankr. S.D.Ohio 1987); *In re Doggett,* 75 B.R. 789, 791 (Bankr.S.D.Ohio 1987); *In re Satterfield,* 25 B.R. 554, 557 (Bankr.N.D.Ohio 1982). See also *In re Ward,* 857 F.2d 1082, 1085 (6th Cir.1988). "Because direct proof of intent (i.e., the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred." *Rembert,* 141 F.3d at 282, *In re Long,* 124 B.R. 54, 56 (Bankr. N.D.Ohio 1991) quoting *Matter of Van Horne,* 823 F.2d 1285, 1287 (8th Cir.1987); *In re Weaver,* 139 B.R. 677, 679 (Bankr. N.D.Ohio 1992).

■■■ The Court may consider a number of factors in determining whether a charge-card debt should be non-dischargeable. The factors set out below are not intended to be exclusive, nor are all to be given equal weight. *In re Faulk,* 69 B.R. 743, 757 (Bankr.N.D.Ind.1986). See also *Rembert* at 282. Each decision must be made on a case by case basis, and individual factors may or may not be of assistance to the Court. *Faulk,* 69 B.R. at 757.

These factors have been employed by a number of courts and are as follows:

1.  The length of time between the charges made and the filing of bankruptcy;
2.  Whether or not an attorney has been consulted concerning the filing of the bankruptcy before the charges were made;
3.  The number of charges made;
4.  The amount of the charges;
5.  The financial condition of the debtor at the time the charges were made;
6.  Whether the charges were above the credit limit of the account;
7.  Did the debtor make multiple charges on the same day;
8.  Whether or not the debtor was employed;
9.  The debtor's prospects for employment;
10. Financial sophistication of the debtor;
11. Whether there was a sudden change in the debtor's buying habits; and
12. Whether the purchases were made for luxuries or necessities.

*In re Doggett,* 75 B.R. 789, 792 (Bankr. S.D.Ohio 1987); *In re Jacobs,* 196 B.R. 429, 433 (Bankr.N.D.Ind.1996) (citing *In re Williamson,* 181 B.R. 403 (Bankr.W.D.Mo. 1995)); *In re Carrier,* 181 B.R. 742, 748 (Bankr.S.D.N.Y.1995); *Faulk,* 69 B.R. at 757. See also *In re Pursley,* 158 B.R. 664, 668 (Bankr.N.D.Ohio 1993); *Satterfield,* 25 B.R. at 557–58 (Bankr.N.D.Ohio 1982).

■■■ It is clear that an ability to repay at the time the charges were incurred is not the sole basis for a determination of dischargeability under § 523(a)(2)(A). *Rembert,* 141 F.3d at 281 ("[W]e hold that the proper inquiry to determine a debtor's fraudulent intent is whether the debtor subjectively intended to repay the debt.") However, as noted supra, it is probative as to the Defendant's actual intent, which

must necessarily be inferred from the surrounding circumstances. *Id.* at 282.

 Upon consideration of the particular circumstances in the instant case, this Court concludes that the debt at issue is nondischargeable. At first blush Defendant's explanation appears appropriate. It would not be uncommon or necessarily fraudulent for a person whose home has been badly damaged to attempt to repair the damage and return their lives to normal as soon as possible, even if already in a precarious financial condition. However, Defendant and her husband received Eighty-eight Thousand Dollars ($88,000.00) from their homeowner's insurance for just this purpose. Defendant has not adequately explained why this amount was not sufficient. Even if this Court were to accept the form of the Defendant's husband's explanation (it was not presented at trial), it would not be adequate. Because the Defendant and her husband did many of the repairs themselves, rather than through a contractor, they should have saved money and not gone over budget. Without further explanation, which was simply not provided, this Court can only conclude that the extra expenditures were improvements rather than repairs on the home. Considering that the Defendant had only a modest excess income over expenditures, not including the payments on the other credit cards she had, this Court concludes that she was at the least using Plaintiff's account for unnecessary expenditures in gross disregard to her ability to repay it, and in contemplation of an eventual bankruptcy. Further, the Defendant's failure to disclose the receipt of the insurance proceeds in her Statement of Financial Affairs does not reflect positively on the veracity of her testimony at trial, or upon the honesty of her actions at issue in this case. Accordingly, this Court concludes that the Defendant did not intend to repay her debt to the Plaintiff as it was incurred.

For the foregoing reasons, this Court concludes that the debt at issue in this case is non-dischargeable in the amount of Four Thousand Eight Hundred Fifty and 09/100 Dollars ($4,850.09) the only amount proven by the Plaintiff. In reaching the conclusions found herein, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

**ORDERED** that the Wendy G. Pennell's obligation to AT & T Universal Bank be, and is hereby NON–DISCHARGEABLE in the amount of Four Thousand Eight Hundred Fifty and 09/100 Dollars ($4,850.09).